UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THE UNITED STATES OF AMERICA for
the Use of HARBOR CONSTRUCTION
COMPANY, INC.,

         Plaintiff,

v.                                      Civil No. 4:14cv17

T.H.R. ENTERPRISES, INC.,

and

THE HANOVER INSURANCE COMPANY,

         Defendants.

FILED
SEP - 9 2014
CLERK, US DISTRICT COURT
NORFOLK, VA

### MEMORANDUM ORDER

Currently pending in this case are a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and a motion to stay proceedings in this Court and compel alternative dispute resolution. ECF Nos. 12, 13. Both motions were filed collectively by defendants T.H.R. Enterprises, Inc. ("THR") and The Hanover Insurance Company ("Hanover") (collectively, "Defendants"). Plaintiff, the United States of America for the use of Harbor Construction Company, Inc. ("Plaintiff"), has not filed a response in opposition to either motion. For the reasons set forth below, the Court **GRANTS** the unopposed motion to stay and compel alternative dispute resolution.

I.

On September 22, 2011, the United States of America entered a contract with THR wherein THR would act as a prime contractor and provide construction services and improvements for a project on Langley Air Force Base in Hampton, Virginia. ECF No. 8, ¶¶ 6, 9. Hanover acted as a surety under the contract and furnished the United States with a payment bond. Id. ¶¶ 3, 6. On October 19, 2011, Harbor Construction Company, Inc. ("Harbor") and THR entered a written subcontract ("the Subcontract") requiring Harbor to provide electrical services, labor, and materials in exchange for $1,400,000, excluding change orders and additional work. Id. ¶¶ 11-12. Harbor claims that it completed the work required under the Subcontract, as well as "change orders and directions for extra work," in July 2013. Id. ¶¶ 12-13, 16. After performing the work, Harbor demanded payment from THR multiple times, but THR purportedly refused to pay a balance of $122,526.25. Id. ¶¶ 13-15.

Harbor filed the instant action against THR and Hanover in February of 2014, and subsequently filed an amended complaint alleging three grounds for recovery. See id. ¶¶ 20-32. Count I is a Miller Act claim against Hanover as surety under the payment bond. Id. ¶¶ 20-26. Count II is a breach of contract claim against THR. Id. ¶¶ 27-28. Count III is an unjust enrichment claim against THR. Id. ¶¶ 29-32.

2

II.

Defendants' motion to dismiss is filed pursuant to Rule 12(b)(6), which authorizes the dismissal of a complaint, or a claim within a complaint, based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Defendants' motion seeking a stay is grounded in the language of the Subcontract, which is attached to Plaintiff's complaint, and expressly provides THR the right to elect alternative dispute resolution, to include "mediation" or "arbitration," in order to resolve all disputes arising under the Subcontract.

As stated above, Defendants' motion to stay and compel alternative dispute resolution is <u>unopposed</u>. Absent any objection to such requested relief, the Court considers whether it is appropriate to compel the parties to engage in alternative dispute resolution, as elected by THR.

The pertinent language of the Subcontract states that "[a]t [THR]'s sole election, any and all disputes arising in any way or related in any way or manner to [the Subcontract] may be decided by mediation, arbitration or other alternative dispute resolution proceeding as chosen by [THR]." ECF No. 8, at 13. The Subcontract further states that the remedies set forth therein "shall be [Harbor]'s sole and exclusive remedy in lieu of any claim against [THR]'s bonding company pursuant to the

terms of any bond or any other procedure or law, regardless of the outcome of the claim." Id. Thus, the plain language of the Subcontract expressly authorizes THR to elect arbitration as an alternative to litigation. Although such contractual election clause may be susceptible to a legal challenge, Plaintiff has not filed a brief contending that Harbor agreed to this clause as a result of fraud or duress, nor has Harbor otherwise challenged the enforceability of such clause in this case. Cf. Mechanical Power Conversion, L.L.C. v. Cobasys, L.L.C., 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007) (rejecting the plaintiff's legal challenge to the enforceability of an arbitration clause on the basis that the "right to compel arbitration was not mutually held by both of the parties"); Dan Ryan Builders, Inc. v. Nelson, 682 F.3d 327, 329-30 (4th Cir. 2012) (recognizing a conflict between Maryland contract law, which requires that "an arbitration provision must contain a mutually coextensive exchange of promises to arbitrate," and North Carolina law, which holds that "when a contract as a whole is supported by adequate consideration, there is no requirement that an arbitration provision contained in that contract subject all parties to the contract to the same arbitration obligations"); Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 560 (W. Va. 2012) (answering a question certified by the United States Court of Appeals for the Fourth Circuit and adopting a standard

4

similar to North Carolina, whereby a "mutuality of obligation" is not required for a single arbitration clause within a multi-clause contract, but acknowledging that "in assessing whether a contract provision is substantively unconscionable, a court may consider whether the [arbitration] provision lacks mutuality of obligation").

Both Virginia law and federal policy favor arbitration of disputes, and pursuant to federal law, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); see TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 122 (2002) ("[T]he public policy of Virginia favors arbitration."). Here, this Court lacks any evidence or argument contending that THR's invocation of the contractual arbitration clause is untimely, is based on an unenforceable contract provision, or is otherwise improper.[1]

---

[1] It is plain that giving one party overwhelming control over the dispute resolution process is improper. For example, the Fourth Circuit has recognized that a system that gave one party exclusive control over the identity of potential arbitrators, and further provided additional one-sided benefits to that same party, was improperly "crafted to ensure a biased decisionmaker." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938-40 (4th Cir. 1999); see Murray v. United Food & Commercial Workers

5

Absent any challenge to the validity or invocation of the contractual arbitration clause, the Court views the clause as enforceable under general principles of Virginia contract law. See TM Delmarva Power, 263 Va. at 120-23 (remanding with instructions to compel arbitration because the permissively phrased contractual arbitration provision stating that "either Party may commence arbitration" gave both parties the option to elect arbitration, but once elected, "arbitration [was] compelled under the agreement") (emphasis added).

In light of the express language in the Subcontract, and the unopposed nature of Defendants' request for arbitration, the Court **GRANTS** the motion to stay and to compel arbitration of the instant dispute arising out of the Subcontract before the Court. In light of such ruling, the Court does not at this time reach the merits of the pending motion to dismiss.[2]

### III.

For the reasons stated above, Defendants' motion to stay proceedings in this Court and to compel arbitration of the

---

Int'l Union, 289 F.3d 297, 303 (4th Cir. 2002). The current case, however, appears distinguishable because THR has the contractual power to choose the general type of alternative dispute resolution, not the decision-makers themselves or the manner in which arbitration will be conducted. The Court presumes that, here, counsel for both parties will work together to ensure an even-handed and unbiased arbitration process.

[2] Although this Court does not reach the merits of Defendants' separately filed motion to dismiss, a cursory review of the amended complaint, the motion to dismiss, and the memorandum in support, suggest that Plaintiff's amended complaint likely includes sufficient facts, taken as true at the 12(b)(6) stage, to satisfy the applicable pleading standard as to one or more grounds for relief set forth therein.

instant dispute is **GRANTED**. ECF No. 13. No ruling is issued as to the separately filed motion to dismiss. ECF No. 12.

It is hereby **ORDERED** that until this case is reactivated by Court order, it shall be stricken from the active docket and no longer considered a pending case for administrative purposes. In order to allow the Court to effectively manage its docket, and with the benefit of encouraging an orderly, timely, and cost effective resolution of this matter, counsel for Plaintiff and counsel for Defendants are each **INSTRUCTED** to file a status update with this Court no later than December 31, 2014.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for both parties.

**IT IS SO ORDERED.**

/s/ MSD
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 9, 2014